**MIMS et ux. v. HUNKEN et al. (No. 1115.)**

(Court of Civil Appeals of Texas. Beaumont. May 10, 1924. Rehearing Denied May 28, 1924.)

**1. Appeal and error ⬡ 1048(6)—Cross-examination using term "lied" held not prejudicial error.**

Where, in suit to enforce lien against homestead, defendant asserted defense based upon his admitted false representations to his wife, questions on his cross-examination as to whether he expected jury to believe anything he would say, and whether he would not readily lie again before jury to keep property, held not prejudicial error.

**2. Pledges ⬡ 16(3)—Evidence held to show codefendant held vendor's lien note as collateral security for note of lesser amount.**

Evidence held to show that codefendant was not the owner of a $14,000 vendor's lien note, but held it under a pledge as collateral security for a $6,000 note.

**3. Vendor and purchaser ⬡ 281(1)—Plea held equivalent to general denial placing burden on one seeking foreclosure of vendor's lien note to show ownership.**

Where, in suit to foreclose vendor's lien note and to hold inferior codefendant's alleged vendor's lien note, defendant mortgagor filed no special defense against codefendant's claim of ownership of latter note, but contested codefendant's right to foreclose his lien, defendant's plea was as to codefendant equivalent to at least general denial which placed burden on codefendant to show ownership of latter note.

**4. Vendor and purchaser ⬡ 280(3)—Failure to sustain allegations of ownership of lien note precluded judgment therefor though no denial of ownership.**

In action to foreclose prior vendor's lien note codefendant, who failed by his evidence to sustain his allegation of ownership of a vendor's lien note, held not entitled to have judgment for note notwithstanding defendant mortgagor interposed no answer as to codefendant.

**5. Husband and wife ⬡ 270(5)—Right of wife, in suit against husband involving community property, to intervene stated.**

In suit against husband involving community property the wife may intervene if no exception is urged against her plea.

**6. Vendor and purchaser ⬡ 279—Rights stated of holder of vendor's lien note as security in suit to foreclose prior lien note.**

In suit to foreclose prior vendor's lien note, codefendant, as holder of vendor's lien note to secure another matured note of lesser amount, held proper party, with right to have judgment of foreclosure and order protecting him in proceeds of sale to extent of his claim.

**7. Judgment ⬡ 252(5)—Pleading of claimant of inferior vendor's lien held sufficient to secure protection as to legal and equitable rights.**

In suit to foreclose vendor's lien where claimant of inferior vendor's lien, after pleading all facts of transfer to him of vendor's lien note as collateral for smaller note and the other facts connected with his claim, prayed for general relief, held sufficient to afford him relief as to both his legal and equitable rights.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by J. C. Hunken against T. H. Mims and others, in which Rena Mims, as the wife of named defendant, intervened. From the judgment rendered in favor of plaintiff and defendant Abe Halff and defendant E. H. Coombs, defendant Mims and wife appeal. Judgment as to plaintiff and Halff, affirmed, as to E. H. Coombs reformed and as reformed affirmed.

H. H. Cooper, of Houston, for appellants.

Baker, Botts, Parker & Garwood, of Houston, for appellees.

WALKER, J. Appellee J. C. Hunken instituted this suit against Abe Halff and T. H. Mims upon a vendor's lien note for $16,000, praying judgment against them on the note and to foreclose the vendor's lien against certain property described by him in his petition, also praying for a foreclosure of the lien against E. H. Coombs, who was alleged to hold another vendor's lien note against the same property in the sum of $14,000, but as an inferior lien to the $16,000 note. Mims answered that the property involved was his homestead and that the deed from him and his wife to Halff, reserving the two vendor's lien notes described in plaintiff's petition, was, in effect, only a mortgage, and that the deed and therefore the notes were void under the Constitution. He alleged in detail the circumstances leading up to the execution of the deed and the notes, and further alleged that he made false statements to his wife in order to secure her signature to the deed. Coombs answered that he loaned Mims $6,000 and took the $14,000 note as collateral security, and on default in the payment of his note became the purchaser of the $14,000 note under the conditions of his pledge contract. Mrs. Mims intervened, claiming the land as her home, and alleged the fraudulent acts of her husband in securing her signature to the deed, that the deed was intended only as a mortgage, and that the holders of the notes had notice of these facts. She also contested Coombs' ownership of the $14,000 note.

On issues in due form the jury found that

the sale from Mims and wife to Abe Halff to the land in controversy was bona fide and not simulated or pretended. On this verdict, the court entered judgment in favor of Hunken and Halff for the amounts claimed by them respectively, with a foreclosure of the vendor's liens decreeing Hunken's lien to be superior to that of Coombs.

[1] Appellants contend that this case should be reversed because of misconduct on the part of Hunken's counsel, such as reflected in the following bill of exception:

"Be it remembered that upon the trial of the above-styled and numbered cause, while the defendant T. H. Mims was upon the stand, testifying in his own behalf, and while he was being cross-examined by counsel for the plaintiff, Mr. Walne, he was asked the question:

"'You come into court now and tell the jury that you lied to your wife to beat her out of the property, and then you expect them to believe anything you can say, do you? A. It wouldn't make any difference what they believe. I am telling the truth. I am swearing now.

"'Q. But do they know you will tell the truth? A. That's up to them.

"'Q. According to your story, you lied to get the money, didn't you? A. Yes, sir.

"'Q. Now, then, you will agree with me very readily that you would not hesitate to lie to keep the property, wouldn't you?' (To which question the counsel for the defendant and intervener objected, because it was not a fair way to interrogate the witness, and thereupon said witness was cross-examined by counsel for plaintiff:)

"'Q. Would you, or not?' A. So far as I, individually, am concerned, I would be willing to give it up now.

"'Q. Just answer the question. Would you or not swear to a lie to keep this property? A. No, sir.

"'Q. Have you sworn to a lie to keep this property? A. No; I have not willfully and knowingly.

"'Q. Haven't you, under oath, sworn to a lie to keep this property? Remember, you are under oath.' Would you or not swear to—have you sworn to a lie to keep this property? (To all of which action and ruling of the court the defendant then and there excepted, and here and now tenders this bill of exception' to such action and ruling of the court, and prays that the same be signed and filed and made a part of the record in this cause.)"

We cannot say that counsel's conduct was detrimental to defendants; that is, it does not appear to us that the manner of the examination of Mims contributed to the jury's verdict. His conduct towards his wife was reprehensible. On his own admissions, he had made false statements to her as an inducement to secure her signature to the deed. When charged with "having lied to get the money," he admitted it. The basic facts behind the examination of Mims have support in the evidence. The complaint is against the use of the term "liar," in defining his character. We are inclined to think that the use of this term to the extent indulged in by counsel was not in keeping with the dignity of a judicial hearing, and the respect due by counsel to a trial court. But, on the facts of this case, the issue thus raised by appellants bears more on the ethics of trial procedure than on the question of procedural error.

[2] We do not think the evidence sustains Coombs' plea of ownership of the $14,000 note. After having testified, on direct examination, that he had bought the note, on cross-examination he gave the following statement as to the real facts of his alleged purchase:

"I went to Mr. Vinson's office and told him I believed I would claim that note, and I did claim it; I had a right to claim it under the contract, and that is what I call a sale. That is all I did towards making the sale."

He further testified that he entered a credit on the note on the 31st of October, the day on which he said he decided to claim the note, of $1,000, or "it may have been put on there a day or two after that, but I put it on there." His testimony further showed that the property had a cash value of $30,000 or $40,000, and that the prior lien against the $14,000 note was only $16,000, with interest and costs. On his own testimony, he was not the owner of the $14,000 note, but held it only as a pledge.

[3-5] It is no answer to this conclusion to say, as counsel insist, that Mims did not controvert his plea of purchase. While Mims filed no special defense against the Coombs claim of purchase, he was contesting his right to a foreclosure of his lien, and we think his plea should be given at least the effect of a general denial, which would have placed on Coombs the burden of showing ownership. But if Mims had no answer, Coombs specially pleaded his ownership and undertook to sustain it by proof. Having failed by his evidence to sustain his allegations of ownership, he should not have had judgment for the note. But Mrs. Mims did contest his claim of ownership, and no exception was urged by Coombs against her right to maintain this suit. Of course, the right rested in T. H. Mims to defend in his name suits involving community property, but the wife may also contest suits involving community property interest, if no exception is urged against her plea. In this case, she was a party by intervention, and T. H. Mims was a party defendant under the plaintiff's petition.

[6] The $6,000 note executed by Mims to E. H. Coombs was dated September 17, 1917, and drew interest at the rate of 8 per cent. per annum, payable from date semiannually, and provided for 10 per cent. attorney's fees. As we understand the evidence, two years' interest was paid on this note, and that it was placed in the hands of Mr. Coombs' counsel for collection. As the holder of the

$14,000 note under a valid transfer, for the purpose of securing him in the $6,000 note, Mr. Coombs was a proper party to this suit, with a right to have judgment on the $14,-000 note, foreclosing the vendor's lien, with a proper order protecting him in the proceeds of the sale to the extent of his claim.

[7] While he has no alternative plea, asking for this relief, yet he fully pleaded all the facts of the execution of the $6,000 note, of the transfer to him of the $14,000 note as collateral, and the other facts connected with his claim, and prayed for general relief. We think this prayer is sufficient to protect him in all of his legal and equitable rights. Therefore it is our order that the judgment of the trial court in favor of appellee J. C. Hunken be in all things affirmed; that the judgment in favor of the appellee E. H. Coombs, foreclosing the lien on the $14,000 note, be affirmed; but that the judgment awarding him the ownership of the note be reversed and in lieu thereof that he be declared the holder of the note only as collateral security for his $6,000 note, with interest and attorney's fees, and that the proceeds of the sale be applied first to the satisfaction of the costs of court, as directed by the trial court's judgment, then to the satisfaction of Hunken's note, then to the satisfaction of the Coombs $6,000 note, with interest, costs, etc., and the balance, if any, be paid to appellants, Mims and wife.

As so reformed, the judgment of the trial court is in all things affirmed.

───────────────────────────────
⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes